UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

In re:

    PARADE PLACE, LLC,

                   Debtor.

Case No. 13-13160 (MG)
Jointly Administered

Chapter 11

---

Samuels Temple Church of God in Christ,

                   Plaintiff,

          v.

Parade Place, LLC, Saadia Shapiro, Marla Shapiro, Valley National Bank,

                   Defendants.

Adv. Pro. Case No. 13-01556 (MG)

**MEMORANDUM OPINION AND ORDER GRANTING MOTION OF 75 125TH HOLDINGS LLC FOR SUBSTITUTION AS A DEFENDANT AND DISMISSING COMPLAINT**

*A P P E A R A N C E S:*

KRISS & FEURSTEIN LLP
*Attorneys for 75 125th Holdings LLC*
360 Lexington Avenue, Suite 1200
New York, NY 10017
By:    Jerold Feurstein, Esq.

LAW OFFICES OF CHRISTOPHER PETER McDONNELL
*Attorneys for Plaintiff Samuels Temple Church of God in Christ*
146-26 35 Avenue
Flushing, NY 11254
By:    Christopher Peter McDonnell, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is 75 125th Holdings LLC's *Motion to be Substituted as a*

*Defendant Or, Alternatively, To Intervene as of Right Pursuant to Federal Rules of Civil*

*Procedure Rules 24(a)(2) and 25(c) and to Dismiss the Adversary Complaint Pursuant to 11*

1

*U.S.C. § 105(a) and 11 U.S.C. § 510(c), Federal Rules of Bankruptcy Procedure Rule 7012(b) and Federal Rules of Civil Procedure Rules 12(B)(6) and 12(d)* (the "Motion," ECF Doc. # 5-1).[1] 75 125th Holdings LLC ("Holdings") filed a Memorandum of Law in support of the Motion (the "Mem.," ECF Doc. #5-2), seeking (1) to substitute Holdings in place of Valley National Bank ("Valley"), a named defendant in this adversary proceeding, or, in the alternative, permitting Holdings to intervene; and (2) an order dismissing the adversary complaint (the "Adversary Complaint," ECF Doc. # 1) filed by Samuels Temple Church of God in Christ (the "Church"). No response was filed to the Motion.[2] The Court held a hearing on January 27, 2014.

For the reasons that follow, the Court **GRANTS** the Motion—Holdings is substituted as a defendant in place of Valley, and the adversary complaint against Holdings is dismissed with prejudice on grounds of *res judicata*.

## I.    BACKGROUND

The Church is the prior owner of property located at 75 East 125th Street, New York, New York (the "Property"). The Church sold the Property to Parade Place, LLC ("Parade Place"), a defendant in this case, on August 17, 2006. Parade Place and its affiliate 75 East 125th, LLC ("75 East") are debtors in chapter 11 proceedings under joint administration.

---

[1]    Unless otherwise noted, all references to the docket are to Adv. Pro. No. 13-01556.

[2]    At the hearing on the Motion, the Church's counsel claimed that he filed a response, referring the Court to a document titled *Opposition of Samuels Temple Church of God in Christ to Pending Motion to Settle* (ECF Doc. # 10). This document, however, does not reference the Motion; rather it addresses a motion to approve a settlement, filed in case number 13-13160. In any event, the Church's counsel stated on the record that the Church was not opposing the Motion. Defendants Saadia Shapiro and Marla Shapiro answered the adversary complaint. Defendant Parade Place, LLC answered the adversary complaint and filed a single counterclaim against the Church alleging that the Church filed a Notice of Pendency against the Property (as defined below) that was "false and defamatory"; the Church answered the counterclaim. This opinion only addresses issues raised by the Motion.

2

### A. The Mortgage and Note

On December 11, 2006, 75 East executed a mortgage (the "Mortgage") and note (the "Note") encumbering the Property, in favor of LibertyPointe, in the principal sum of $1,950,000. Defendant Saadia Shapiro personally guaranteed repayment of the Loan pursuant to a Guarantee Agreement dated December 11, 2006. On March 11, 2010, the New York State banking Department closed LibertyPointe, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver. Pursuant to a Purchase and Assumption Agreement, the assets of LibertyPointe, including the Note and Mortgage, were transferred and assigned to Valley, evidenced by an Assignment of Mortgage executed by the FDIC. Effective June 1, 2010, Valley assigned the Note and Mortgage to VNB New York Corp., as evidenced by an Assignment of Mortgage recorded with the Registrar's Office on November 20, 2013. Effective June 1, 2013, VNB New York Corp. merged with and into VNB MergerCo., LLC, which thereafter changed its name to VNB New York, LLC. By Assignment of Mortgage dated November 1, 2013, and recorded with the Registrar's Office on November 20, 2013, VNB New York, LLC assigned the Mortgage to Holdings. At the same time, VNB New York indorsed the Note to Holdings.

Based on this series of assignments, Holdings contends that it is the owner and holder of the Note and Mortgage. (Motion ¶ 17.) Holdings therefore asks this Court for an order, pursuant to Federal Rule of Civil Procedure 25(c), substituting Holdings as a defendant in this adversary proceeding in place of Valley, or, in the alternative, permitting Holdings to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2).

### B. The Foreclosure Action

Beginning on August 1, 2008, 75 East stopped making the required payments under the Note and Mortgage. LibertyPointe elected to accelerate the indebtedness under the Note and

Mortgage. On December 9, 2008, LibertyPointe commenced a foreclosure action styled *LibertyPointe Bank v. 75 East 125th LLC, et al.*, Supreme Court, New York County Index No. 116405/08 (the "Foreclosure Action") and filed a Notice of Pendency. A new Notice of Pendency was re-filed on or about December 9, 2011. On or about November 29, 2009, the Church filed a Notice of Appearance in the Foreclosure Action.

On March 29, 2010 (the "March 29 Order"), the State Supreme Court entered an order on default granting LibertyPointe's motion for summary judgment to appoint a referee to compute the amount due and owing to LibertyPointe under the Note and Mortgage. On or about May 7, 2010, the Church moved by Order to Show Cause in the Foreclosure Action for an order vacating the March 29 Order, for leave to conduct discovery and to record a 198-year lease. In or about November 2010, the Church also sought leave to submit a late Answer in the Foreclosure Action. Many of the allegations asserted by the Church in its Order to Show Cause and in support of its request to file a late Answer in the Foreclosure Action are identical to allegations raised by the Church in the Complaint filed in this adversary proceeding. (*See* Motion ¶ 25 (listing identical allegations)).

By order dated February 14, 2011, the State Supreme Court denied the Church's motions in their entirety and held that the Church had "failed to present a meritorious defense to [LibertyPointe's] complaint." Specifically, the state court found that (1) LibertyPointe had standing to prosecute the Foreclosure Action, (2) by filing a Notice of Appearance, the Church contradicted its claim that it was not served with a summons and complaint, and (3) the Church's assertions that it was fraudulently induced to enter into a contract with 75 East and Shapiro had no bearing on LibertyPointe's right to foreclose. The Church never appealed the February 14, 2011 order, and the time to do so has since expired. (*See* Motion ¶ 27.)

4

The State Supreme Court entered a Judgment of Foreclosure ("JFS") on August 8, 2013, and a Sheriff's foreclosure sale of the Property was scheduled for September 25, 2013. The Church never appealed the JFS. On September 19, 2013, the Church filed a proposed Order to Show Cause in the Foreclosure Action for an order staying the foreclosure sale, vacating the JFS, granting the Church leave to file a late Answer, and declaring that Church has the right to occupy the Property. On September 23, 2013 (the "Petition Date"), two days before the scheduled foreclosure sale of the Property, the 75 East filed for protection under chapter 11 of the Bankruptcy Code. The Order to Show Cause was never heard due to the filing of chapter 11 petitions by 75 East and Parade Place. On November 1, 2013, VNB New York, LLC assigned the JFS to Holdings by Assignment of Judgment of Foreclosure.

    C.    **The Adversary Proceeding**

The Church initiated this adversary proceeding on October 24, 2013, by filing the Adversary Complaint. The Adversary Complaint names as defendants Parade Place, Shapiro, Marla Shapiro, Valley, and all successors in interest to those named defendants. In the complaint, the Church claims that it was fraudulently induced to convey the Property to Parade Place by intentional misrepresentations made by Parade Place and Shapiro. The Church further contends that the Shapiros concealed the Church's valid lease on the Property when they applied for and obtained a loan from Valley. The Church claims that Valley knew that the Church maintained an interest in the Property and that a voidable deed existed between the Debtor and the Church. As to Valley's pending foreclosure on the Property, the Church asserts that Valley has no standing to prosecute any foreclosure action. The Church seeks a Court order declaring that Valley is not a valid holder in due course of the Note and Mortgage. The Church also seeks

5

to set aside conveyance of the Property and to invalidate liens placed on the Property by the Debtor or Shapiro.

## II.    DISCUSSION

Through the Motion, Holdings seeks (1) to be substituted as defendant in place of Valley, or, in the alternative, to intervene in the adversary proceeding as a matter of right; and (2) an order dismissing the Adversary Complaint as barred by *res judicata*, collateral estoppel, *Rooker-Feldman*, and the *D'Oench* doctrine.

### A.    Substitution and Intervention

Federal Rule of Civil Procedure 25(c), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7025, provides:

> (c) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

FED. R. CIV. P. 25(c).

"Substitution under Rule 25(c) is a procedural mechanism designed to facilitate the continuation of an action when an interest in a lawsuit is transferred and does not affect the substantive rights of the parties." *Dollar Dry Dock Sav. Bank v. Hudson St. Dev. Assocs.*, No. 92 Civ. 3737 (SAS), 1995 WL 412572, at *4 (S.D.N.Y. July 12, 1995) (citations omitted). "The Court's main consideration in deciding a motion under Rule 25(c) is whether substitution will expedite and simplify the action." *Id.* No party has opposed Holdings' request to be substituted as defendant in place of Valley. Holdings is the party currently holding the Note and Mortgage,

and is actively pursuing its rights under those instruments. Substituting Holdings into this case would expedite and simplify the action, so that portion of the Motion is **GRANTED**.[3]

### B.    Res Judicata

*Res judicata*, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation omitted). New York "has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos*, 14 F.3d at 790.

---

[3]    The Court notes that pursuant to the Federal Rules of Civil Procedure, Holdings would also be allowed to intervene in this action as a matter of right.

Intervention as of right under Rule 24(a)(2) is granted when all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).

All of the factors for intervention as of right under Rule 24, as made applicable in this adversary proceeding by Bankruptcy Rule 7024, are satisfied: (1) the Motion is timely, (2) Holdings asserts an interest in the Property, (3) Holdings must be able to act in this case to protect its interest, and (4) no other party is actively acting to protect Holdings' interest.

7

Here, the Church had an opportunity in the Foreclosure Action to litigate LibertyPointe's right to foreclose on the Property. The State Supreme Court granted LibertyPointe's motion for summary judgment on default, and then upheld that default when it denied the Church's motion to vacate the order. The State Supreme Court found that (1) LibertyPointe had standing to bring the action because it had ownership of the Mortgage and Note when the case was commenced, and (2) the Church had not presented any meritorious defense to the complaint. This judgment constitutes a final judgment on the merits. *See, e.g., Dillard v. Henderson*, 43 F. Supp. 2d 367, 369 (S.D.N.Y. 1999) ("A judgment on the merits for purposes of *res judicata* is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment.")

Further, *res judicata* bars issues that were or *could have been* litigated in the Foreclosure Action. *See Burgos*, 14 F.3d at 789. This includes any claims in the Adversary Complaint regarding the secured lender's right to foreclose, as far as those claims are based on issues with the origination of the Mortgage and Note.[4] This also includes any claims regarding Valley's right to foreclose on the Property. Even though this issue was not actually litigated in the Foreclosure Action, it could have been. The FDIC closed LibertyPointe during the pendency of its summary judgment motion; one ground for the Church's motion to vacate was that LibertyPointe no longer owned the Mortgage and Note—those instruments had been sold to Valley. The Church could have challenged that assignment at that time, but did not. The Church is now barred by *res judicata* from asserting Valley's lack of standing as a defense.

---

[4] The State Supreme Court did not decide any issues relating the alleged fraud committed by Parade Place and the Shapiros; while the Church may have valid claims against those defendants, the Court offers no opinion on the merits of those potential claims.

8

### C.     Collateral Estoppel

Collateral estoppel, or issue preclusion, is distinct from *res judciata*. "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Burgos*, 14 F.3d at 789 (quoting *Allen*, 449 U.S. at 94). As with *res judicata*, this Court applies the New York law of collateral estoppel when presented with a New York state court judgment. *Allen*, 449 U.S. at 96. "Under New York law, the doctrine of collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.'" *Id*. at 792 (quoting *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984)). "There are two requirements for the application of collateral estoppel to an issue: (1) '[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Id*. (quoting *Schwartz v. Public Adm'r*, 246 N.E.2d 725, 729 (1969)).

The analysis for the application of collateral estoppel is similar to that of *res judicata*, but with a slightly different result in this case. Because the State Supreme Court never actually decided whether the assignment to Valley was valid, the Church's challenge of that assignment is not barred by collateral estoppel. As discussed above, however, it is barred by *res judicata*.

### D.     Rooker-Feldman

The *Rooker-Feldman* doctrine is premised upon two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Lance v. Dennis*, 546 U.S. 459 (2006), the Supreme Court explained:

9

> The *Rooker-Feldman* doctrine takes its name from the only two cases in which we have applied this rule to find that a Federal District Court lacked jurisdiction. In *Rooker*, a party who had lost in the Indiana Supreme Court, and failed to obtain review in this Court, filed an action in Federal District Court challenging the constitutionality of the state-court judgment. We viewed the action as tantamount to an appeal of the Indiana Supreme Court decision, over which only this Court had jurisdiction, and said that the aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly. *Feldman*, decided 60 years later, concerned slightly different circumstances, with similar results. The plaintiffs there had been refused admission to the District of Columbia bar by the District of Columbia Court of Appeals, and sought review of these decisions in Federal District Court. Our decision held that to the extent plaintiffs challenged the Court of Appeals decisions themselves—as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals—their sole avenue of review was with this Court.

*Id.* at 463 (internal quotation marks and citations omitted).

The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state court judgment from seeking review and rejection of that judgment in federal court. Bankruptcy courts cannot, in effect, sit as appellate courts for adverse rulings against a now-debtor in bankruptcy court that lost in state court.

Most attempts to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than *Rooker-Feldman* because, in addition to the inherently limited scope of *Rooker-Feldman*, preclusion in federal court on the basis of a state court judgment is determined by state law, not federal law doctrine. As the Supreme Court has said, "incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Id.* at 465–466 ("A more expansive *Rooker-Feldman* rule would tend to supplant Congress' mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.

10

Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments.").

In light of the Court's determination above that the Adversary Complaint against Holdings is barred by *res judicata*, it is unnecessary to consider whether the limited *Rooker-Feldman* doctrine would deprive this Court of jurisdiction to entertain the claims against Holdings.[5]

### E.    The *D'Oench* Doctrine

The federal common law *D'Oench* doctrine, as set forth in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), and codified in 12 U.S.C. § 1823(e), applies when the FDIC acquires notes from failed banks and protects the FDIC from challenges brought by an obligor of a note, based on an oral agreement the obligor had with the issuing bank. Thus, under the *D'Oench* doctrine, the FDIC, and its assignees and transferees, may take assets of failed banks free of defenses based on oral agreements. *See FDIC v. Newhart*, 892 F.2d 47, 49 (8th Cir. 1989). In its February 14, 2013 order, the State Supreme Court held that this doctrine precluded 75 East and Shapiro from raising the oral agreements they had made with LibertyPointe as defenses to foreclosure. Similarly, the doctrine prevents the Church from challenging the validity of the original Note and Mortgage based on fraudulent inducement between LibertyPointe and 75 East/Shapiro.

---

[5] The Second Circuit has extrapolated four requirements for application of the *Rooker-Feldman* doctrine: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state court judgment must have been rendered before the district court proceedings commenced." *Wilson v. Deutsche Bank Nat'l Trust (In re Wilson)*, 410 F. App'x 409, 410 (2d Cir. 2011) (internal quotation marks and citation omitted). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Courts have applied *Rooker-Feldman* where a party seeks to set aside a foreclosure judgment. *See, e.g. In re Ward*, 423 B.R. 22, 27–28 (Bankr. E.D.N.Y. 2010) (holding that *Rooker-Feldman* applied where party sought to set aside a judgment of foreclosure).

11

### III. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** the Motion, substituting Holdings in place of Valley, and **DISMISSING WITH PREJUDICE** the Adversary Complaint as it pertains to Holdings.

**IT IS SO ORDERED.**

Dated:   January 27, 2014
         New York, New York

                                    ____*Martin Glenn*_____
                                         MARTIN GLENN
                                    United States Bankruptcy Judge