**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    PARADE PLACE, LLC, *et al*.,<br><br>                                                        Debtors. | **FOR PUBLICATION**<br><br>Case No. 13-13160 (MG)<br><br>Jointly Administered |
| Samuel's Temple Church of God in Christ,<br><br>                                                        Plaintiff,<br><br>            v.<br><br>Parade Place, LLC, Saadia Shapiro, Marla Shapiro, Valley National Bank,<br><br>                                                        Defendants. | Adv. Pro. Case No. 13-01556 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REARGUE**

*A P P E A R A N C E S:*

ROBERT G. LEINO, ESQ.
*Attorney for Samuel's Temple Church of God in Christ*
224 Riverside Drive, 6B
New York, New York 10025
By:    Robert G. Leino, Esq.

KRISS & FEURSTEIN LLP
*Attorneys for 75 125th Holdings LLC*
360 Lexington Avenue, Suite 1200
New York, NY 10017
By:    Jerold Feurstein, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

On January 27, 2014, this Court entered an Opinion and Order[1] granting the motion of 75

125th Holdings LLC ("Holdings"),[2] substituting Holdings in place of Valley National Bank

---

[1]    *Memorandum Opinion and Order Granting Motion of 75 125th Holdings LLC for Substitution as a Defendant and Dismissing Complaint* (the "Prior Opinion," ECF Doc. # 16).

("Valley") as defendant in this adversary proceeding and dismissing the Adversary Complaint[3] as to Valley/Holdings. The plaintiff, Samuel's Temple Church of God in Christ (the "Church"), did not oppose the relief sought by Holdings. The Church subsequently retained new counsel and filed a Motion to Reargue,[4] asking the Court to reconsider and vacate its Prior Opinion. The Church argues that (1) its former counsel inadvertently neglected to oppose the relief sought by Holdings; (2) substitution of Holdings as defendant was inappropriate because Holdings could have merely intervened; and (3) Holdings failed to establish that the Church's claims are barred by any of the doctrines of *res judicata*, collateral estoppel, *Rooker-Feldman*, and *D'Oench* (defined below).

For the reasons that follow, the Motion is **DENIED**. The Church has not identified an intervening change of controlling law, and the Motion does not rely on new evidence. Further, the Church has failed to show the need to correct clear error of law or prevent manifest injustice, or that the Court overlooked matters that would have altered its decision. But because the Church has identified claims against Valley not previously articulated to the Court, the Court clarifies that nothing in the Prior Opinion bars the Church from attempting to assert those claims in state court. This Court, however, will not exercise jurisdiction over claims solely between two non-debtors, with no conceivable effect on the bankruptcy estates in these proceedings.

---

[2]    *Motion to be Substituted as a Defendant Or, Alternatively, To Intervene as of Right Pursuant to Federal Rules of Civil Procedure Rules 24(a)(2) and 25(c) and to Dismiss the Adversary Complaint Pursuant to 11 U.S.C. § 105(a) and 11 U.S.C. § 510(c), Federal Rules of Bankruptcy Procedure Rule 7012(b) and Federal Rules of Civil Procedure Rules 12(B)(6) and 12(d)* (the "Holdings Motion," ECF Doc. # 5-1).

[3]    (ECF Doc. # 1.)

[4]    *Motion to Reargue* (the "Motion," ECF Doc. # 21).

I. BACKGROUND

Pending before the Court is the Church's Motion to Reargue, supported by the Affirmation of Robert G. Leino (ECF Doc. # 21-1) and a Memorandum of Law (the "Mem.," ECF Doc. # 21-5). The Church requests that the Court reconsider and vacate its Prior Opinion granting the Holdings Motion. Holdings filed an opposition (the "Opposition," ECF Doc. # 28), supported by a Memorandum of Law (the "Opp. Mem.," ECF Doc. # 28-21).

The Church owned property located at 75 East 125th Street, New York, New York (the "Property"), before selling the Property to Parade Place, LLC ("Parade Place") on August 17, 2006. Parade Place—a defendant in this adversary proceeding—planned to develop the Property, and purportedly granted the Church a 198-year lease. Parade Place subsequently transferred title of the Property to its affiliate 75 East 125th, LLC ("75 East"). Parade Place and 75 East (together, the "Debtors") are Debtors in chapter 11 proceedings under joint administration.

On December 11, 2006, 75 East executed a commercial mortgage (the "Mortgage") and note (the "Note") encumbering the Property in favor of LibertyPointe Bank ("LibertyPointe"), in the principal amount of $1,950,000. Beginning on August 1, 2008, 75 East stopped making the required payments under the Note and Mortgage. On December 9, 2008, LibertyPointe commenced a foreclosure action in the Supreme Court of the State of New York, County of New York (the "State Court"), styled *LibertyPointe Bank v. 75 East 125th LLC, et al.*, Supreme Court, New York County Index No. 116405/08 (the "Foreclosure Action"). The Church filed a Notice of Appearance in the Foreclosure Action, despite later claiming that it was never served with the complaint. (*See* Memorandum Decision of State Court Denying Motion to Vacate (the "State

3

Court Decision"), attached as Ex. 2 to Mot., at 2, 9.) The Church did not file an answer in that action. (*See id.* at 2.)

On March 11, 2010, the New York State Banking Department closed LibertyPointe, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for the failed bank. Contemporaneously, the FDIC entered into a Purchase and Assumption Agreement with Valley, transferring and assigning to Valley certain assets of LibertyPointe, including the Mortgage and Note. Valley then assigned the Mortgage and Note to VNB Corp. ("VNB"), which continued to prosecute the Foreclosure Action initiated by LibertyPointe.[5]

Although 75 East and its managing member Saadia Shapiro answered the complaint in the Foreclosure Action and stated counterclaims, they later failed to respond to a summary judgment motion filed by the LibertyPointe. On March 29, 2010, the State Court entered an order on default (the "Summary Judgment Order," attached as Ex. 1 to the Motion) granting LibertyPointe's motion for summary judgment in the Foreclosure Action, striking 75 East's and Shapiro's answer, dismissing their counterclaims, and appointing a referee to compute the amount owed to LibertyPointe under the Note and Mortgage. Pursuant to the Summary Judgment Order, the caption of the Foreclosure Action was amended to include the Church as a defendant. (Summary Judgment Order at 3–4.)

The Church then moved in the State Court for an order vacating the Summary Judgment Order, for leave to conduct discovery, and to record its purported 198-year lease. The Church also sought leave to submit a late answer.

---

[5] For purposes of this Opinion, it is immaterial whether claims were lodged by or against LibertyPointe, Valley, or VNB. Since each of these entities had an interest in the Property at a different time, the Opinion refers to them interchangeably.

4

By written decision dated February 14, 2011, the State Court denied the Church's motions in their entirety and held that the Church had "failed to present a meritorious defense to [LibertyPointe's] complaint."[6] (State Court Decision at 20.) Specifically, the State Court found that (1) LibertyPointe had standing to prosecute the Foreclosure Action; (2) by filing a Notice of Appearance, the Church belied its claim that it was not served with a summons and complaint; and (3) the Church's assertions that it was fraudulently induced to enter into a contract with 75 East and Shapiro had no bearing on LibertyPointe's right to foreclose. (*Id.* at 14, 20.) The Church never appealed the State Court Decision, and the time to do so has since expired.[7]

On August 8, 2013, the State Court entered a Judgment of Foreclosure and Sale (the "JFS," Opp. Ex. B-14, ECF Doc. # 28-17). Pursuant to the JFS, a Sheriff's foreclosure sale of the Property was scheduled for September 25, 2013. The Church did not file a notice of appeal from the JFS, but instead filed a proposed Order to Show Cause in the Foreclosure Action seeking an order (1) staying the foreclosure sale; (2) vacating the JFS; (3) granting the Church leave to file a late answer; and (4) declaring that the Church has the right to occupy the Property. (*See* Holdings Motion ¶¶ 30–33.) 75 East filed a chapter 11 bankruptcy petition on September

---

[6]     Under New York law, a default judgment may be vacated if "the defendant can demonstrate both a reasonable excuse for the default and a potentially meritorious defense." *Caba v. Rai*, 63 A.D.3d 578, 580 (N.Y. App. Div. 2009).

[7]     75 East and Shapiro *did* appeal the State Court Decision, which denied their motion to vacate the Summary Judgment Order as well. On appeal, the First Department reversed that portion of the State Court's decision, finding that 75 East and Shapiro had a potentially meritorious fraudulent inducement defense to the complaint in the Foreclosure Action. LibertyPointe then moved again in the State Court for summary judgment against 75 East and Shapiro, which the State Court granted in a memorandum decision entered on February 14, 2013. (*See* Feb. 14, 2013 State Court Decision, Opp. Ex. B-16, ECF Doc. # 28-19.) The State Court based its decision on the *D'Oench* doctrine, which "prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift." (*Id.* at 15 (internal quotation marks omitted).) The State Court found that the *D'Oench* doctrine barred 75 East and Shapiro from raising as a defense to foreclosure fraudulent inducement based on representations by LibertyPointe's former chairman. (*Id.* at 16.) The State Court also rejected an argument by 75 East and Shapiro that VNB lacked standing to prosecute the Foreclosure Action due to alleged irregularities in the assignments from the FDIC to Valley and from Valley to VNB, noting that the court had already held that LibertyPointe had standing to maintain the action in the State Court Decision. (*Id.* at 8.)

23, 2013, followed shortly thereafter by Parade Place's petition on September 27, 2013. The foreclosure sale was stayed by virtue of these bankruptcy proceedings, and the Church's Order to Show Cause was never heard.

On October 23, 2013, the Church filed the Adversary Complaint in this Court. The Adversary Complaint names as defendants Parade Place, Saadia Shapiro, Marla Shapiro, Valley, and all successors-in-interest to those named defendants. In the Adversary Complaint, the Church asserts that Valley (1) knew that the Church maintained an interest in the Property and that a voidable deed existed between Parade Place and the Church; and (2) lacked standing to prosecute the Foreclosure Action. The Church sought an order declaring that Valley was not a valid holder in due course of the Mortgage and Note.

In November 2013, VNB assigned the Mortgage, Note, and JFS to Holdings. On January 22, 2014, Holdings filed the Holdings Motion in this Court, seeking (1) to substitute itself in place of Valley, or, in the alternative, for permission to intervene; and (2) an order dismissing the Adversary Complaint. The Church did not file a response to the Holdings Motion.[8] The Court held a hearing on January 27, 2014, at which the Church's then-counsel stated on the record that the Church was not opposing the Holdings Motion. (Jan. 27, 2014 Tr. 12:14–15 ("As I said, my concern is with the debtor and the Shapiro's [sic]. I am not opposing the present motion.").) Following the hearing, the Court entered the Prior Opinion, granting the Holdings Motion; Holdings was substituted as defendant in place of Valley and the Adversary Complaint against Holdings was dismissed with prejudice.

---

[8]   At the hearing on the Holdings Motion, the Church's then-counsel claimed he had filed a response, referring the Court to a document titled *Opposition of Samuel['']s Temple Church of God in Christ to Pending Motion to Settle* (ECF Doc. # 10). That document, however, does not reference the Holdings Motion; rather, it addresses a motion to approve a settlement, filed in case number 13-13160.

6

The Church filed this Motion on February 10, 2014, requesting that the Court reconsider and vacate the Prior Opinion. The Church first argues that substitution of Holdings as defendant was inappropriate where Holdings could have merely intervened. Second, the Church argues that Holdings failed to establish that the Church's claims are barred by *res judicata*. Third, the Church argues that its prior counsel inadvertently neglected to oppose the Holdings Motion. Fourth, the Church argues that collateral estoppel does not bar its claims. Fifth, the Church argues that the *Rooker-Feldman* doctrine does not apply to its claims. Finally, the Church argues that the *D'Oench* doctrine does not control here.

## II.    DISCUSSION

Local Bankruptcy Rule 9023-1(a) provides:

> A motion for reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be reargued orally.

L.B.R. 9023-1(a).

Local Bankruptcy Rule 9023-1(a) derives from Former Local Bankruptcy Rule 13(j) and is an adaptation of Civil Rule 6.3 of the Local District Rules. *See Comment to Local Bankruptcy Rule 9023-1*. The standard applicable to motions for reargument is identical to that applicable to motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). *In re Bressler*, No. 06-11897 (AJG), 2007 WL 98493, at *1 (Bankr. S.D.N.Y. Jan. 12, 2007) (citing *In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1996); *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F. Supp. 209, 210 (S.D.N.Y. 1990)). "The movant must show that the

7

court overlooked controlling decisions or factual matters that might materially have influenced its earlier decision." *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005); *see also Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988) ("The only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked matters or controlling decisions which, had they been considered, might reasonably have altered the result reached by the court." (internal quotation marks omitted)). A motion for reargument "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite of the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (discussing Rule 59). Parties cannot use a motion for reargument to advance new facts or arguments and may not submit affidavits or new material. *Asia Global Crossing*, 332 B.R. at 524; *accord Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.)*, 216 B.R. 713, 716 (S.D.N.Y. 1997) (discussing reargument under Civil Rule 6.3). "The standard for granting motions to reargue is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." *Adams*, 686 F. Supp. at 418 (internal quotation marks omitted); *see also Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 61 (Bankr. S.D.N.Y. 2003).

Additionally, Bankruptcy Rule 9024 incorporates Rule 60 of the Federal Rules of Civil Procedure, which establishes the grounds for relief from a final order. Rule 9024 provides that a court may grant relief from an order for a clerical mistake or for "mistake, inadvertence, surprise, excusable neglect," newly-discovered evidence, fraud, misrepresentation, misconduct, where the order is void or has been satisfied, released, or discharged or "is no longer equitable, or for any other reason that justifies relief" from the order. FED. R. CIV. P. 60(a), (b). A motion for reconsideration "is generally not favored and is properly granted only upon a showing of

8

exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted). "A motion for reconsideration should be granted *only* when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (emphasis added) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

The Church has not identified any intervening change of controlling law. Additionally, its Motion does not rely on new evidence. Thus, to prevail on the Motion, the Church must show the need to correct clear error of law or prevent manifest injustice, or that the Court overlooked matters that would have altered its earlier decision. The Church fails to satisfy its heavy burden. But in the Motion, the Church articulates—for the first time—potential monetary claims against Valley. While nothing in the Prior Opinion bars the Church from attempting to assert those claims in the State Court, this Court declines to exercise jurisdiction over the claims.

### A.    Substitution and Intervention

The Church argues that substituting Holdings as defendant was inappropriate because the assignment of the Mortgage and Note to Holdings was silent whether Holdings assumed liability for alleged wrongful lending in origination of the loan. (*See* Mem. at 6.) According to the Church, the "more cautious decision" would have been to let Holdings intervene. (*Id.*) The Church had the opportunity to advance this argument in response to the Holdings Motion, but chose instead not to oppose that motion, as expressly stated by the Church's prior counsel.

The Court permitted Holdings to be substituted as defendant after considering the relevant law and the uncontroverted fact that Holdings is the current holder of the Mortgage and Note. (*See* Prior Opinion at 6–7.) The Court determined that granting Holdings' request for

substitution would expedite and simplify the action. In its Motion, the Church does not provide any intervening change in material facts or controlling law that warrant reconsideration of this issue. The Church cannot now advance a new argument under the guise of preventing manifest injustice. This portion of the Motion is **DENIED**.

### B.   *Res judicata*

The Church argues that the Holdings Motion failed to establish that the Church's claims are barred by *res judicata* for several reasons. (*See* Mem. at 6–13.) First, it asserts that the State Court Decision was not an adjudication on the merits. (*See id.* at 6–7.) Second, the Church argues that its wrongful lending and fraud claims were not decided in the Foreclosure Action. (*See id.* at 7–9.) Third, the Church claims that, because the State Court Decision denied the Church's motion to vacate on procedural grounds, *res judicata* does not bar it from asserting those claims in the adversary proceeding. (*See id.* at 9–11.) Fourth, the Church argues that, under New York law, *res judicata* does not bar claims from a prior litigation that ended in a default judgment. (*See id.* at 11–13.) Fifth, the Church argues that equity and consistency require that the Holdings Motion be denied. (*See id.* at 13.)

Under New York law, *res judicata* "precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *Josey v. Goord*, 880 N.E.2d 18, 20 (N.Y. 2007) (internal quotation marks omitted). *Res judicata* bars all matters that were, *or could have been*, litigated in the prior action. *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). Thus, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981).

10

The Church points to *Aguilar v. Jacoby*, 827 N.Y.S.2d 77 (N.Y. App. Div. 2006), to demonstrate that this Court improperly relied upon the State Court Decision in concluding that the Church's claims were barred by *res judicata*. Under *Aguilar*, a "determination that [a movant] failed to demonstrate a meritorious cause of action for purposes of vacating [a] default [does] not constitute a determination on the merits" for *res judicata* purposes. *Id.* at 78 (citations omitted). The Church correctly asserts that, according to *Aguilar*, the State Court Decision—which denied the Church's motion to vacate for lack of a meritorious defense—was not an adjudication on the merits and cannot be relied on to bar the Church's claims under *res judicata*. Thus, the Court should not have relied on the State Court Decision in the Prior Opinion as a basis for *res judicata*.

Nonetheless, the JFS entered in the Foreclosure Action *was* a final judgment on the merits, and, therefore, *Aguilar* does not alter the result reached in the Prior Opinion. *See Gray v. Bankers Trust Co. of Albany, N. A.*, 442 N.Y.S.2d 610, 612 (N.Y. App. Div. 1981) ("A judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded."); *see also Swiatkowski v. Citibank,* 745 F. Supp. 2d 150, 171–72 (E.D.N.Y. 2010) (holding that an "earlier state court action, which included a Final Judgment of Foreclosure and Sale, was a previous adjudication on the merits" (internal quotation marks omitted)), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). Indeed, under the express terms of the JFS, all of the defendants in the Foreclosure Action are "forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in [the Property][.]" (JFS at 6.) The JFS was entered on August 8, 2013, and the Church—by then a named defendant in the Foreclosure Action—did

11

not appeal that judgment. The JFS is therefore final as to all questions between the parties, including any defenses that were, or could have been, litigated.

Without the aid of responsive pleading by the Church, the Court, in the Prior Opinion, construed the Church's Adversary Complaint against Valley as (1) asserting that Valley lacked standing to prosecute the Foreclosure Action and (2) seeking a Court order declaring that Valley is not a valid holder in due course of the Note and Mortgage. (*See* Prior Opinion at 5.) The Court held that those claims were barred by *res judicata*. That determination remains true: any questions relating to Valley's standing to foreclose were adjudicated on the merits by the State Court when it entered the JFS; the Church is barred from bringing those claims here.

In the Motion, the Church articulates for the first time that its claims against Valley include "an action for money damages based on wrongful lending, negligence, breach of fiduciary duty, or fraud." (Mem. at 9–10; *id.* at 8 ("The gist of plaintiff church's claims is that the defendant developer did not have the authority to apply for mortgages, and secondly that the mortgage bank knew of that restriction which makes it liable for wrongful lending and/or fraud.").) According to the Church, "in deciding the mortgagee's summary judgment motion in the state foreclosure action, the [State] Court never addressed any potential counter-claim or cause of action for wrongful lending. The scope of the court's review was narrow, focusing merely on whether the elements of the foreclosure action were met by the bank." (*Id.* at 8.) The Church asserts, therefore, that its claims against Valley cannot be barred by *res judicata*.

The Court did not squarely address this issue in the Prior Opinion because the Adversary Complaint makes no mention of a separate claim for money damages against Valley based on wrongful lending. Indeed, the Church's former counsel expressly told the Court that the Church was not interested in pursuing claims against Valley. In any event, this Court lacks subject

12

matter jurisdiction under 28 U.S.C. § 1334 to hear a monetary claim by the Church (a non-debtor) against Valley (also a non-debtor), since that claim could not have any conceivable effect on the bankruptcy estates of Parade Place and 75 East. *See In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012) ("Bankruptcy jurisdiction is appropriate over third-party non-debtor claims that directly affect the res of the bankruptcy estate." (internal quotation marks omitted)); *see also Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy [sufficient to confer bankruptcy jurisdiction] is whether its outcome might have any conceivable effect on the bankrupt estate." (internal quotation marks omitted)).

This Court does, however, have subject matter jurisdiction over the Church's claims against Debtor Parade Place, and the Prior Opinion did not affect those claims. (*See* Prior Opinion at 2 n.2, 8 n.4.) The Court will assume for purposes of discussion that it could, in its discretion, exercise supplemental jurisdiction over the Church's claims against Valley under 28 U.S.C. § 1367, which grants jurisdiction "over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy[.]" *See Shafferman v. The Queens Borough Public Library (In re JMK Constr. Grp., Ltd.)*, 502 B.R. 396, 403 n.4 (Bankr. S.D.N.Y. 2013) ("While not free from doubt, there is authority, including in the Second Circuit, that bankruptcy courts may exercise supplemental jurisdiction." (citing *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005); *Lionel Corp. v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir. 1994))); *see also Cavalry Constr., Inc. v. WDF, Inc. (In re Cavalry Constr., Inc.)*, 496 B.R. 106, (S.D.N.Y. 2013) (holding that "bankruptcy courts may exercise supplemental jurisdiction under § 1367").

13

There are several reasons a court may decline to exercise supplemental jurisdiction, including if "the claim raises a novel or complex issue of State Law," or if, "in exceptional circumstances, there are compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Assuming the Court has the power to exercise supplemental jurisdiction over monetary claims the Church might have against Valley, the Court declines to do so. Resolution of whether those claims are barred by *res judicata* is muddied by the lengthy, complex history of the Foreclosure Action in the State Court. Additionally, the viability of the state law claims—including the claim for "wrongful lending"—should be decided by the State Court, particularly since the claims are asserted against a successor to a failed bank that acquired its interest in the loan through an FDIC transfer.

A sale of the Property pursuant to the JFS has yet to occur, and the Church's pending Order to Show Cause in the State Court will give the Church an opportunity to have its claims heard. The State Court will presumably have to address the Order to Show Cause if and when this Court lifts the automatic stay to allow the foreclosure sale to proceed. As of the date of this Opinion, no party has moved the Court to do so, and the automatic stay remains in place.

As a last-ditch effort, the Church argues that consistency requires that the Holdings Motion be denied. To support its claim, the Church states: "The doctrine of *res judicata* . . . was established as a means to promote legal economy and certainty." (Mem. at 13 (alteration added) (quoting *Monahan v. New York City Dep't. of Corrs.*, 214 F.3d 275, 286 (2d Cir. 2000)).) The Church's argument in this regard is peculiar and convoluted. But in any event, the case relied upon by the Church stands for the proposition that consistency *favors* the application of *res judicata*. *See Monahan*, 214 F.3d at 280, 286. The Court agrees.

For these reasons, this portion of the Motion is **DENIED**.

C.     **Inadvertence**

The Church next argues that its prior counsel inadvertently neglected to: (1) "file an opposition affirmation or opposition brief to [Holdings'] motion to intervene and dismiss"; and (2) oppose the Holdings Motion at oral argument. (Mem. at 14.) Further, the Church asserts that "[t]o the extent that the Court based its decision on non-opposition, inadvertence of counsel can be excused under the rules." (*Id.*) The Church cites no case law to support its argument and does not indicate which rule would permit the Court to provide the relief it seeks.

In any event, the Church is incorrect. In *Canfield v. Van Atta Buick/GMC Truck, Inc*, 127 F.3d 248, 250 (2d Cir. 1997), the Second Circuit explained that "inadvertence" as used in Federal Rule of Civil Procedure 60(b) must be analyzed under the Supreme Court's *Pioneer* test for establishing excusable neglect.[9] Under that test, "at least for the purposes of Rule 60(b), excusable neglect is understood to encompass situations in which the failure . . . is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 386 (1993). But there was no negligence or mistake involved in the Church's counsel's deliberate and clear choice not to oppose the Holdings Motion. The Church asserts that it "had repeatedly stated to him that the motion should be opposed, and the [C]hurch was under the impression that the motion was being opposed." (Mem. at 14.) But "litigants are generally bound by the professional conduct of the attorneys they choose to represent them, although the conduct of counsel may give rise to a claim for malpractice by the client." *Davidowitz v. Patridge*, No. 08

---

[9]     In *Pioneer*, the Court explained that, in determining whether a movant has established excusable neglect in failing to comply with a bar date, a court should consider: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

15

Civ. 6962 (NRB), 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010) (internal quotation marks omitted).

Moreover, the Court did not base its previous ruling on the Church's non-opposition. The Court considered all of the relevant law and entered a written decision. The Court would have certainly appreciated the Church's participation in the proceedings to clarify its position and the history of the State Court Action, but the failure of the Church's former counsel to do so is not grounds for granting the relief sought. This portion of the Motion is **DENIED**.

### D.    Collateral Estoppel

The Church also argues that, for the same reasons as *res judicata*, its claims against Valley are not barred by collateral estoppel. (*See* Mem. at 14.) In the Prior Opinion, the Court recognized that "[c]ollateral estoppel, or issue preclusion, is distinct from *res judicata*." (Prior Opinion at 9.) The Court held that, while the Church's challenge of the assignment of the Note and Mortgage to Valley was barred by *res judicata*, that challenge was not barred by collateral estoppel. (*Id.*) Given the Court's ruling in this Opinion with respect to *res judicata*, there is no need to reconsider this portion of the Prior Opinion. This portion of the Motion is **DENIED**.

### E.    *Rooker-Feldman*

The Church next argues that the *Rooker-Feldman* doctrine does not apply. (*See* Mem. at 14.) In so doing, it seems to miscomprehend the Prior Opinion. In the Prior Opinion, the Court declined to consider whether the *Rooker-Feldman* doctrine applies to the present case. (*See* Prior Opinion at 11 ("In light of the Court's determination above that the Adversary Complaint against Holdings is barred by *res judicata*, it is unnecessary to consider whether the limited *Rooker-Feldman* doctrine would deprive this Court of jurisdiction to entertain the claims against

16

Holdings.").) For the same reasons, the Court declines to engage in this analysis here. This portion of the Motion is **DENIED**.

### F. The *D'Oench* Doctrine

Finally, the Church argues that the *D'Oench* doctrine is not controlling because the Church intends to plead numerous causes of action. (*See* Mem. at 14.) Some of those causes of action—fraud, wrongful lending, negligence, and breach of fiduciary duty—the Church argues, are not dependent on the existence of oral agreements; therefore, the *D'Oench* doctrine is inapplicable here. (*Id.*) In the Prior Opinion, the Court held that the *D'Oench* doctrine, codified in 12 U.S.C. § 1823(e), "prevents the Church from challenging the validity of the original Note and Mortgage based on fraudulent inducement [through oral agreements] between LibertyPointe and 75 East/Shapiro." (Prior Opinion at 11.) That holding remains true. As explained above, the Court did not consider monetary claims the Church may have against Valley. Given the Court's decision not to exercise supplemental jurisdiction over those claims, this portion of the Motion is **DENIED**.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

### III.     CONCLUSION

Based on the foregoing, the Motion is **DENIED**.  The Church has not carried its heavy burden to show that the Court should reconsider its Prior Opinion or that the Court should hear reargument on the Holdings Motion.  Although the Church asserts that it has direct monetary claims against Valley, those claims were not addressed in the Prior Opinion, and the Court declines to exercise jurisdiction over such claims.

**IT IS SO ORDERED.**

Dated:    May 2, 2014
          New York, New York

*____Martin Glenn____*
MARTIN GLENN
United States Bankruptcy Judge

18